UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH OSTRANDER, an individual;<br><br>Plaintiff,<br><br>v.<br><br>ST. COLUMBA SCHOOL; and DOES 1 through 50 inclusive;<br><br>Defendants. | Case No.:   3:21-cv-00175-W-LL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DOC. 4]** |

Defendant Pastor of Saint Columba Catholic Parish in San Diego, California ("St. Columba") moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Sarah Ostrander opposes.

The Court decides the matter on the papers submitted and without oral argument. Civ. L.R. 7.1(d.1). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion [Doc. 4].

//

//

//

1

I. **BACKGROUND**

Plaintiff Sarah Ostrander came to California after working as a teacher for several years throughout the mid-Atlantic. (*Compl.* [Doc. 1-2] ¶¶ 9–10.) She graduated from Aurora University in 2010 with a bachelor's degree in Elementary Education and a minor in Special Education. (*Id.* ¶ 8.) In 2018, she was hired by the San Diego Catholic school, St. Mary's, as a second-grade teacher for the 2018-2019 school year. (*See Id.* ¶¶ 2, 12.) The following year, she was hired by another San Diego Catholic school, Defendant St. Columba — this time as a preschool teacher for the 2019-2020 school year. (*Id.* ¶ 13.) Ostrander's contract with St. Columba provided her with an annual salary of $40,000. (*Id.* ¶ 18.)

In May of that same year, Ostrander became pregnant. (*Compl.* ¶ 19.) Ahead of her due date of February 6, 2020, Ostrander was admitted to the hospital with pre-term labor on December 12, 2019. (*Id.* ¶¶ 19–20.) The next day, St. Columba decided to cancel Ostrander's contract, changing her employment from a salaried position to an hourly one.[1] (*Id.* ¶ 21.) Feeling the demands of the job were better matched with a salaried position, Ostrander resisted the change. (*Id.* ¶ 22.) As an hourly employee, Ostrander faced a comparable weekly salary during the school year but would not be paid when school was out for vacations or holidays. (*Id.* ¶ 23.)

On January 15, 2020, Ostrander submitted a request to take FMLA leave beginning on February 6, 2020, her original due date, to the Diocese of San Diego Education & Welfare Corporation ("the Diocese"). (*Compl.* ¶ 24.) She planned to return to work on April 30 to complete the 2019-2020 school year. (*Id.*) On January 16, however, St. Columba terminated Ostrander's employment. (*Id.* ¶ 26.) St. Columba stated

---

[1] In her Complaint, Ostrander alleges "Defendants" made the decision to cancel her contract. (*Compl.* ¶ 21.) Originally, the named Defendants were the Diocese and St. Columba School. Ostrander later dismissed the Diocese. (*See Notice of Removal* Ex. 1 [Doc. 1-2].) Because St. Columba is the only remaining defendant, when the Complaint refers to "Defendants," the Court assumes it is referring to St. Columba.

Ostrander's coursework in college and her Virginia teaching certificate would not transfer to the State of California for Community Care Licensing. (*Id*. ¶ 27.)

On October 2, 2020, Ostrander filed a lawsuit in the San Diego Superior Court against the Diocese and St. Columba alleging twelve causes of action, including: (1) violation of the Pregnancy Disability Leave Law ("PDLL"); (2) sex and pregnancy discrimination in violation of Title VII; (3) discrimination based on pregnancy (sex) in violation of California's Fair Employment and Housing Act ("FEHA"); (4) harassment based on pregnancy (sex) in violation of FEHA; (5) retaliation in violation of FEHA; (6) failure to take reasonable steps to prevent discrimination, harassment, and retaliation in violation of FEHA; (7) failure to take appropriate corrective action in violation of FEHA; (8) interference with the right to take leave under the California Family Rights Act ("CFRA"); (9) retaliation in violation of CFRA; (10) interference with the right to take leave under the Family Medical Leave Act ("FMLA"); (11) retaliation in violation of FMLA; and (12) wrongful termination in violation of public policy. On January 29, 2021, St. Columba removed the case to federal court. (*See Notice of Removal* [Doc. 1].) St. Columba now seeks to dismiss all twelve causes of action. (*P&A* [Doc. 4].) Ostrander opposes the motion. (*Opp'n* [Doc. 8].)

## II.  LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

3

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences.  Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### III.   REQUEST FOR JUDICIAL NOTICE

In conjunction with its motion, St. Columba requests judicial notice of (1) its Articles of Incorporation filed with the California Secretary of State on November 5, 2010, and (2) a fully executed copy of the Teacher Employment Agreement entered into by Ostrander and St. Columba for the 2019-2020 academic year.  (*See RJN* [Doc. 4-2].)  As a general rule, when considering matters outside the pleadings in ruling on a motion to dismiss, courts must convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d).  Exceptions to this rule exist for (1) matters of public record; and (2) documents upon which a plaintiff's complaint necessarily relies and whose authenticity no party questions.  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

The Court finds it appropriate to take judicial notice of St. Columba's Articles of Incorporation filed with the California Secretary of State because they are admissible as matters of public record under Federal Rule of Evidence 803(8)(B). With respect to Ostrander's employment agreement with St. Columba, neither party questions its authenticity. Further, Ostrander references this contract in her Complaint and her claims

fundamentally rest on her employment with St. Columba. Accordingly, the Court will grant St. Columba's Request for Judicial Notice.

### IV. DISCUSSION

#### A. FEHA Claims (3rd, 4th, 5th, 6th, and 7th Causes of Action).

Ostrander alleges St. Columba committed five FEHA violations: (1) discrimination based on her pregnancy status; (2) harassment based on her pregnancy status; (3) retaliation; (4) failure to take reasonable steps to prevent discrimination; and (5) failure to take appropriate corrective action. (*Compl.* ¶¶ 53, 60, 66, 72, 78.) FEHA prohibits qualifying employers from engaging in discriminatory employment practices. Cal. Gov't Code § 12940(a). However, an exemption to the definition of "employer" exists for "religious association[s] or corporation[s] not organized for private profit." Gov't Code § 12926(d); see also Henry v. Red Hill Evangelical Lutheran Church of Tustin, 201 Cal. App. 4th 1041, 1050 (2011) (affirming the trial court's finding that a school operated by a church is excluded from FEHA's definition of "employer").

St. Columba argues Ostrander's claims must be dismissed because it is a religious corporation sole and is therefore not considered an "employer" under FEHA. (*P&A* 7:6–16.) In response, Ostrander argues FEHA applies to St. Columba under a statutory exemption in California Government Code § 12926.2(f), which states, in relevant part, "a nonprofit public benefit corporation formed by, or affiliated with, a particular religion and that operates an educational institution as its sole or primary activity" shall be subject to the provisions of FEHA. (*Opp'n* 12:11–15; Gov't Code § 12926(f).) She further argues that St. Columba's Articles of Incorporation should not be considered because the statements contained therein are "hearsay" and a dispute of reasonable fact exists over whether St. Columba qualifies as a nonprofit public benefit corporation. (*Id.* 13:7–15.) The Court disagrees with Ostrander's argument.

"A document which [ ] itself affects the legal rights of the parties is not introduced for the truth of the matter asserted because the significance of [the] offered statement lies

5

solely in the fact that it was made." In re Facebook, Inc. S'holder Derivative Priv. Litig., 367 F. Supp. 3d 1108, 1118 (N.D. Cal. 2019) (quoting Foss on Behalf of Quality Sys. Inc. v. Barbarosh, 2018 WL 5276292, *4 n.8 (C.D. Cal. July 25, 2018)). Consistent with this principle, courts routinely take judicial notice of articles of incorporation in evaluating whether FEHA's religious exemption applies. See Baker v. Roman Cath. Archdiocese of San Diego, 2014 WL 4244071, *4 (S.D. Cal. Aug. 26, 2014) (holding articles of incorporation submitted through a RJN are sufficient to demonstrate a defendant is a religious institution exempt from FEHA's definition of "employer" on a motion to dismiss); see also Silo v. CHW Med. Found., 27 Cal. 4th 1097, 1103 (Cal. Sup. Ct. 2002) ("[A]n organization need only be 'religious' and 'not organized for private profit' to qualify for the [FEHA] exemption."); Horn v. Azusa Pac. Univ., 2019 WL 9044606, *5 (C.D. Cal. Jan. 14, 2019) (in support of dismissing a plaintiff's retaliation claim under FEHA, the court found it appropriate to take judicial notice of a defendant's Articles of Incorporation to establish it was a nonprofit religious organization). Thus, Ostrander's argument that the statements within St. Columba's Articles of Incorporation are "hearsay" lacks merit.

Importantly, St. Columba's Articles of Incorporation establish it is a religious corporation as outlined in Gov't Code § 12926(d). The Articles of Incorporation clearly states that St. Columba is "organized and operated exclusively for religious purposes" and makes no reference to its operating as an educational institution at all. (*See RJN, Ex. 1* [Doc. 4-3].) While Ostrander alleges in the Complaint that St. Columba is a "nonprofit benefit corporation formed by, or affiliated with, a particular religion that operates an educational institution as its sole or primary activity," this allegation constitutes an unsupported legal conclusion. (*Compl.* ¶ 47.)

Accordingly, the Court will dismiss the 3rd, 4th, 5th, 6th and 7th causes of action without leave to amend.

### B. PDLL Claim (1st Cause of Action).

Ostrander alleges St. Columba violated PDLL generally through discrimination, harassment and/or retaliation. (*Compl.* ¶ 34.) St. Columba argues that, as a religious corporation, it is exempt from the definition of "employer" under PDLL. (*P&A* 7:6–16.)

PDLL is codified within FEHA and requires qualifying "employers" to grant leave and/or provide reasonable accommodations to employees disabled from qualifying events related to pregnancy. Cal. Gov't Code § 12945. FEHA's definition of "employer" applies to PDLL. Id. at § 12945(a). As outlined above, the Court finds St. Columba does not qualify as an "employer" under FEHA. Consequently, St. Columba does not qualify as an "employer" under PDLL and is therefore exempt.

Accordingly, the Court will dismiss this cause of action without leave to amend.

### C. FMLA and CRFA Claims (8th, 9th, 10th, and 11th Causes of Action).

Ostrander alleges St. Columba: (1) interfered with her right to take CFRA and FMLA leave, and (2) retaliated against her for exercising her right to take CFRA and FMLA leave. (*Compl.* ¶¶ 87, 96, 104, 113.) In evaluating interference and retaliation claims under CFRA and FMLA, plaintiffs must establish they are eligible for such leave. See Choochagi v. Barracuda Networks, Inc., 60 Cal. App. 5th 444, 454-57 (2020). To establish eligibility under CFRA and FMLA, Ostrander must show that at the time she requested leave: (1) she was employed by St. Columba; (2) St. Columba employed 50 or more employees within 75 miles of her workplace; (3) she had more than 12 months of service ***and*** at least 1,250 hours of service with St. Columba during the previous 12-month period; and (4) the reason for her requested leave was qualified under the statute. Gov't Code § 12945.2(a); 29 U.S.C.A. § 2611(2)(A), § 2612(a)(1).[2] Courts routinely analyze CFRA and FMLA claims jointly using federal cases since CFRA and FMLA

---

[2] The parties do not disagree on the first and second elements.

"contain nearly identical provisions regarding family or medical leave." Rogers v. Cty. of Los Angeles, 198 Cal. App. 4th 480, 487 (2011).

### 1. Ostrander Has Not Pled Sufficient Facts to Establish the Diocese Was Her Joint Employer.

St. Columba argues Ostrander was not an eligible employee for CFRA or FMLA as of the date of her expected leave because she had not worked for their school for the requisite 12 months. (*P&A* 9:1–6.) In response, Ostrander argues she met the requisite 12-month minimum because the Diocese was her joint employer with both St. Columba and St. Mary's, the school with which she was employed immediately preceding her time with St. Columba. (*Opp'n* 11:5–8.) In support of her argument, Ostrander cites to paragraph 25 of her Complaint where she alleges "she had been employed by the Defendants for well over 12 months and had completed well over 1250 hours of service."

To demonstrate joint employment under FMLA, a plaintiff must demonstrate the alleged joint employer: "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." Moreau, 356 F.3d at 946–53 (2004). When seeking to establish joint employment, the plaintiff "must at least allege some facts in support of this legal conclusion." Lesnik v. Eisenmann SE, 374 F. Supp. 3d 923, 942 (N.D. Cal. 2019).

To support the assertion that she was jointly employed by the "Defendants," Ostrander's Complaint alleges the Diocese approved leave requests for the Catholic schools operating in San Diego County and that her request for FMLA leave was submitted to the Diocese. (*Compl*. ¶¶ 2, 24–25.) At best, this indicates the Diocese exercised periodic involvement in determining the number of hours teachers worked by virtue of approving leave requests but does not reasonably lead to the conclusion that the Diocese supervised and controlled the teachers' work schedules. And aside from alleging the unsupported legal conclusion that the Diocese was her joint employer, Ostrander does

not allege any other facts to support the three other joint-employer factors.  Moreover, the Complaint admits St. Columba hired Ostrander.[3]  (*Id.* ¶ 13.)

Ostrander's Opposition alleges facts suggesting the Diocese may have maintained her employment records and controlled certain conditions of her employment with St. Columba, including whether she would be paid as a salaried or hourly employee. (*Opp'n* 3:23–24,10:18–28.)  Even if the Court could consider these allegations — which it may not — the allegations fall short of demonstrating the Diocese was her joint employer.  Furthermore, the Complaint is devoid of alleged facts demonstrating a similar joint employer relationship with St. Mary's. Such facts would seem material in order to bridge Ostrander's employment between St. Columba and St. Mary's under her joint employer theory.

### 2. Ostrander Has Not Pled Sufficient Facts to Support Eligibility Under CFRA.

St. Columba argues pregnancy disability is not covered by CFRA and therefore Ostrander is not eligible for CFRA leave.  (*P&A* 10:1–4.)

"CFRA entitles eligible employees to take up to 12 weeks of unpaid medical leave during a 12-month period for certain personal or family medical conditions, including care for their children, parents, or spouses or to recover from their own serious health condition." Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509, 516 (2006).  Qualified leave taken on account of an employee's own serious health conditions does not include "pregnancy, childbirth, or related medical conditions," but the statute does allow for "[l]eave for reason of the birth of a child of the employee." Gov't Code § 12945.2(a), § 12945.2(4)(A).

---

[3] Additionally, in her Opposition, Ostrander admits St. Columba fired her.  (*Opp'n* 4:2–3.)

As an initial matter, Ostrander fails to allege she requested CFRA leave or that she suffered from a qualifying serious health condition. Moreover, the Complaint fails to identify the basis for her CFRA leave. Assuming it was for pregnancy, which is not a covered condition, Ostrander has failed to state a claim.

### 3. Ostrander Has Not Pled Sufficient Facts to Support Equitable Estoppel.

In her opposition, Ostrander claims that St. Columba should be equitably estopped from arguing she did not meet the eligibility requirements for FMLA because the school provided her with an FMLA leave request form upon her asking. (*Opp'n* 11:20–28.) In response, St. Columba argues Ostrander cannot meet the burden of proving any element of equitable estoppel. (*Reply* [Doc. 9] 5:18–21.)

Although the Ninth Circuit has not addressed the issue, other circuit courts have employed the "judicial doctrine of equity which operates apart from any underlying statutory scheme" in certain situations to estop employers who misrepresented FMLA eligibility to their employees. Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 724 (2d Cir. 2001) (holding an employer was estopped from arguing its former employee was ineligible for FMLA protection because the employer failed to communicate the eligibility requirements and the employee could have postponed her leave if she had been informed of what she needed to do to comply with the statute). Thus, St. Columba may be estopped from pursuing a defense if Ostrander can show: (1) St. Columba made a definite misrepresentation of fact with reason to believe Ostrander would rely upon it; (2) Ostrander reasonably relied and acted upon it; and (3) such reliance changed Ostrander's position for the worse. Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 59 (1984).

Here, Ostrander's Complaint does not present facts indicating St. Columba made a definite misrepresentation of fact as to Ostrander's FMLA eligibility. She alleges only that she submitted her FMLA leave request and was fired the next day. (*Compl.* ¶¶ 24,

26.) In her opposition, Ostrander argues St. Columba misrepresented her eligibility when it provided her with an FMLA leave request form upon her asking. (*Opp'n* 11:20–22). The Court does not find this sufficient to establish that St. Columba misrepresented Ostrander's eligibility under FMLA. The allegations in the Complaint fail to reference a misrepresentation by St. Columba regarding Ostrander's FMLA eligibility and there are no facts establishing Ostrander's reliance on such a representation.

### D.   Ministerial Exemption.

The First Amendment protects the independence of religious institutions in deciding matters of "faith and doctrine." Our Lady of Guadalupe Sch. v. Morrissey-Berru, 140 S. Ct. 2049, 2060 (2020). "This does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission." Id. This autonomy includes the "authority to select, supervise, and if necessary, remove a minister without interference by secular authorities." Id. Under the ministerial exemption, courts are bound to stay out of employment disputes involving key positions within religious institutions. Id. The Supreme Court has been reluctant to adopt a rigid formula for deciding when an employee qualifies as a minister but has held such key positions include "lay" teachers employed by parochial schools who perform important religious functions.[4] Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171, 191–92 (2012). Generally, determining whether a ministerial exemption applies requires a factual analysis that is not appropriate to be decided on a 12(b)(6) motion. See Henry v. Red Hill, 201 Cal. App. 4th at 1054.

---

[4] The Synod Lutheran faith classifies teachers as: "lay" and "called." "Lay" teachers are not required to receive Synod training or to be Lutheran. "Called" teachers, by contrast, "are regarded as having been called to their vocation by God through a congregation." Hosanna-Tabor, 565 U.S. at 177.

As both parties have pointed out, in Our Lady of Guadalupe, 140 S. Ct. 2049, the Supreme Court considered the question of whether two lay parochial schoolteachers without ministerial titles or ministerial training qualified as ministers under the exemption. The Court determined that because the teachers did not merely teach "religion from a book" or "accompany students to Mass in order to keep them quiet and in their seats," but rather taught their students prayers, prepared them for Mass and prayed *with* them, that the teachers were entrusted with the responsibility of educating and forming students in the faith of the church. Id. at 2058–69 (quotations removed). In so finding, the Court emphasized that in evaluating whether an employee qualifies as a minister, "[w]hat matters, at bottom, *is what an employee does*." Id. at 2060 (emphasis added).

Aside from the fact that Ostrander was employed as a teacher for a Catholic school, the Complaint is devoid of facts suggesting she was involved in ministerial duties. Nevertheless, St. Columba argues the ministerial exemption applies, relying on the following statement from her employment agreement:

> TEACHER recognizes that Catholic schools and Catholic education are vital participants in the apostolic teaching ministry of the Roman Catholic Church. TEACHER is familiar with and understands the importance of the teachings of the Roman Catholic Church and agrees to give Christian witness in his/her personal and professional life. TEACHER understands and agrees that, as an instructor for SCHOOL, TEACHER is performing a ministerial role which is important to the spiritual and pastoral mission of the Roman Catholic Church and the PARISH.

(*P&A* 10:1–5.) The problem with this argument is the language tells us what Ostrander was *supposed* to do, not what she *actually* did.[5] "Simply giving an employee the title of 'minister' is not enough to justify the exception," what matters "is what an employee does." Our Lady of Guadalupe, 140 S. Ct. at 2060–63. Since Ostrander's Complaint

---

[5] In her Opposition, Ostrander alleged she, in fact, did not partake in any ministerial duties during her employment with St. Columba. (*Opp'n* 3:8−18.) While the facts alleged in her Opposition cannot be considered in deciding the application of the ministerial exemption, the problem remains that the employment agreement does not establish what Ostrander actually did.

does not provide facts sufficient to infer she engaged in acts pursuant to educating or forming students in the faith of the church, under <u>Our Lady of Guadalupe</u>, St. Columba's request to dismiss all of Ostrander's causes of action under the ministerial exemption is not warranted at this time.

### E.    Public Policy.

Ostrander's twelfth cause of action alleges wrongful termination in violation of public policy. (*Compl*. ¶¶ 117–123.) California courts have been clear that wrongful termination claims rooted in public policy violations must have a basis in constitutional or statutory provisions to limit judicial policymaking and maintain the separation of powers envisioned by our nation's Founding Fathers. <u>Green v. Ralee Eng'g Co.</u>, 19 Cal. 4th 66, 79–80 (1998); <u>see</u> <u>Gantt v. Sentry Ins.</u>, 1 Cal. 4th 1083, 1095 (1992); <u>Badih v. Myers</u>, 36 Cal. App. 4th 1289, 1293 (1995). Ostrander argues the public policy of Title VII and the California Constitution, which each protect against sex discrimination (of which pregnancy discrimination is a form) apply. (*Opp'n* 13:20–27.) St. Columba argues that since Ostrander's statutory claims are not sufficiently pled, her corresponding public policy claims are barred; and any public policy violation based on California's constitution is barred by the ministerial exemption. (*P&A* 12:10–13, 22–24.)

For the reasons cited above, Ostrander has not adequately pled any of her statutory claims, including her Title VII claims. However, St. Columba does not argue Ostrander fails to adequately plead her constitutional-based public policy claim, and therefore appears to concede such a violation exists and that it was adequately pled. Accordingly, the Court finds Ostrander has sufficiently pled her claim for violation of public policy under the California Constitution.

### V.    CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion [Doc. 4] as follows:

13

- The first, third, fourth, fifth, sixth and seventh causes of action are **DISMISSED without leave to amend**.
- The eighth, ninth, tenth and eleventh causes of action are **DISMISSED with leave to amend**.
- The motion is **DENIED** as to Ostrander's twelfth cause of action for violation of public policy under the California Constitution.

Plaintiff's first amended complaint must be filed on or before **August 9, 2021**.

**IT IS SO ORDERED.**

Dated:  July 19, 2021

_____
Hon. Thomas J. Whelan
United States District Judge