Devon K. Roepcke (SBN 265708)
**LAW OFFICES OF DEVON K. ROEPCKE**
170 Laurel Street
San Diego, CA 92101
Tel: 619-940-5357
droepcke@lawdkr.com

Attorney for Plaintiff: Sarah Ostrander

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

SARAH OSTRANDER, an
individual;

             Plaintiff,

    v.

ST. COLUMBA SCHOOL;
THE ROMAN CATHOLIC BISHOP
OF SAN DIEGO and DOES 1
through 50 inclusive;

       Defendants.

) CASE NO.: 3:21-cv-00175-W-LL
)
)
) **FIRST AMENDED COMPLAINT FOR**
) **DAMAGES FOR:**
)
)
) 1. **Sex Discrimination in Violation of Title VII**
) 2. **Interference with CFRA Leave**
) 3. **Retaliation in Violation of CFRA**
) 4. **Interference with FMLA Leave**
) 5. **Retaliation in violation of FMLA**
) 6. **Wrongful Termination in Violation of**
)    **Public Policy**
)
) Judge: Hon. Thomas J. Whelan
) Mag. Judge: Hon. Linda Lopez
) Action Date: October 2, 2020
)
)
)
)
)

*Law Offices of*
*Devon K. Roepcke*

**DKR**

-1-
**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, SARAH OSTRANDER demanding trial by jury, complaining and alleging upon information and belief as follows:

## THE PARTIES

1.      Plaintiff, SARAH OSTRANDER (hereinafter "Ms. Ostrander" or "Plaintiff") is an individual who at all relevant times was jointly employed by Defendants in the County of San Diego, State of California.

2.      Defendant, ST. COLUMBA SCHOOL (hereinafter "St. Columba") is a California corporation. At all relevant times St. Columba jointly employed Ms. Ostrander, and more than 50 other employees, in the County of San Diego, State of California.

3.      Defendant, THE ROMAN CATHOLIC BISHOP OF SAN DIEGO (hereinafter the "Diocese") is a California corporation, who at all relevant times jointly employed Ms. Ostrander, and more than 50 other employees, in the County of San Diego, State of California.

4.      Except as otherwise alleged, Plaintiff is unaware of the true names or capacities, whether individual, corporate, associate, or otherwise, of the named Defendants designated herein as DOES 1-50, inclusive. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated herein as DOES 1-50, inclusive, are in some way liable to Plaintiff, and are responsible in some manner for the transactions, events, and occurrences herein alleged and the damage herein was approximately caused thereby. Plaintiff will hereafter seek leave of the Court to amend this First Amended Complaint in order to allege said Defendants' true names and capacities when the same are known to the Plaintiff.

5.      Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned Defendants were the successors in interest agents, trustees, partners, servants, joint ventures, contractors, alter egos and employees of the other Defendants; and the acts and omissions herein alleged were done by them acting

**FIRST AMENDED COMPLAINT**

Law Offices of
Devon K. Roepcke

1    through such capacity and with the scope of their authority and with the permission

2    and consent of their Co-Defendants, or that each of them is jointly and severally liable

3    to Plaintiff.

4    6.      All defendants are hereinafter referred to collectively as "Defendants."

5    7.      Defendants employed 50 or more people within a 75-mile radius to perform

6    services for a salary or wage.

7

8                **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9            Within the time provided by law, Plaintiff made complaints to the California

10   Department of Fair Employment and Housing (hereinafter referred to as "DFEH")

11   against each Defendant. On July 7, 2020, Plaintiff received a right-to-sue letter from

12   the DFEH.  Pursuant to the Worksharing Agreement between the EEOC and the

13   DFEH, Plaintiff's administrative remedies as to her claims under Title VII were also

14   exhausted by this filing.

15

16                        **GENERAL ALLEGATIONS**

17   8.      In May of 2010 Sarah Ostrander ("Ms. Ostrander") graduated from Aurora

18   University in Aurora, Illinois, with a Bachelor's Degree in Elementary Education

19   and a minor in Special Education.

20   9.      Thereafter Ms. Ostrander worked as a teacher in North Carolina for five

21   years, teaching Kindergarten and second grade.

22   10.     Ms. Ostrander's husband is on active duty with the U.S. Navy. As a result,

23   Ms. Ostrander has moved around the country to the various places where he is

24   stationed.

25   11.     After living and working in North Carolina, Ms. Ostrander's husband was

26   stationed at Andrews Airforce Base, in Maryland, so they moved to Maryland.

27   12.     During the time when they were living in Maryland, Ms. Ostrander taught in

28   Maryland and Virginia schools.

Law Offices of
Devon K. Roepke

-3-
**FIRST AMENDED COMPLAINT**

13.     Also during this time, Ms. Ostrander became pregnant and gave birth to her daughter.

14.     In 2018, Ms. Ostrander's husband was stationed in San Diego, so they moved together with their daughter.

15.     Ms. Ostrander has held a teaching certificate in the various states where she worked before moving to California.  When she moved to California she obtained a provisional certification, allowing her to teach while she was in the process of obtaining her California teaching credential.

16.     In 2018, Ms. Ostrander was hired by St. Mary's school as a second grade teacher for the 2018-2019 school year.

17.     St. Mary's is a Catholic school operated by the Diocese.

18.     In order to become employed at St. Mary's Ms. Ostrander had to submit a Live Scan background check, which was received and maintained by the Diocese.

19.     The date Ms. Ostrander was hired to work at St. Mary's is her "Diocesan Hire Date," meaning the date she became employed with the Diocese.

20.     Since it is not uncommon for employees to move around between Catholic schools and parishes, the Diocese maintains employee files for the employees hired at the various institutions under it.

21.     The Diocese keeps track of the "Diocesan Hire Date" for each of its joint employees.  If an employee moves from one school or parish to another, the "Diocesan Hire Date" will stay the same.  This is the date that is used for the purposes of qualifying certain benefits, as well as for FMLA leave.

22.     The schools that operate within the Diocese have their own on-site human resources person, referred to as a "Location Administrator," but there are guided by the human resources at the Diocese, referred to as the "Office for Human Resources."

23.     If there is an issue the Location Administrator is unsure about, they escalate the issue to the Office for Human Resources for a final decision.

**FIRST AMENDED COMPLAINT**

Law Offices of
Devon K. Roepcke

DKR

24.     In 2019, Ms. Ostrander was hired by St. Columba as a preschool teacher for the 2019-2020 school year. St. Columba is also a Catholic school operated by the Diocese.

25.     In the contract Ms. Ostrander signed for St. Columba was a standard contract provided by the Diocese.  It was nearly identical to the contract she signed for St. Mary's.

26.     According to the contract, teachers must submit their fingerprints to the Department of Justice for a background check through Live Scan.  However, this requirement is waived for teachers who have already submitted their fingerprints through Live Scan to the Diocese.  This is because Diocese received, reviewed, and maintained Live Scan employee background check results for the employees that work under it.

27.     The Diocese had the ability to deny employment or terminate an employee who received an unacceptable Live Scan report, even if that employee was technically being hired by a school.

28.     Although Ms. Ostrander was provisionally certified in California, and in the process of receiving her California teaching credential, St. Mary's and St. Columba are Catholic schools, which fall under the Diocese, and as such, there is no requirement that their teachers have California teaching credentials.

29.     Additionally, preschool teachers are not required to have a California teaching credentials. Instead they fall under the guidelines for Community Care Licensing, which is fewer requirements than a teaching credential; a California credentialed teacher does not need to obtain Community Care Licensing to teach preschool.

30.     Nevertheless, having received a degree in Elementary Education and taught for over 7 years, Ms. Ostrander already met the qualifications to receive both the California teaching credential and Community Care Licensing.  It was just a matter of completing the application process and receiving approval.

31.     Ms. Ostrander's contract at St. Columba provided for salary in the amount of

**FIRST AMENDED COMPLAINT**

Law Offices of
Devon K. Roepcke

DKR

$40,000 per year.

32.     On or around May of 2019, Ms. Ostrander became pregnant.  Her due date was February 6, 2020.

33.     Ms. Ostrander's position at St. Columba was as a Lead Preschool/ Kindergarten Teacher.

34.     In her role as a Lead Preschool/ Kindergarten Teacher, Ms. Ostrander was to create nonreligious lesson plans, content, and activities for the other teachers.  In addition, Ms. Ostrander taught her own classes, which included all secular subjects, but focused on literature, arts, and math.

35.     Ms. Ostrander was provided a supporting teacher to help facilitate the class.

36.     About 20 minutes of the school day was dedicated to faith, but that portion of the day was handled exclusively by the supporting teacher. Ms. Ostrander used that time to do her other work.

37.     Ms. Ostrander did not facilitate any of the religious activities or teachings with her students, or any other students at St. Columba.

38.     Ms. Ostrander was not expected to facilitate any of the religious activities or teachings with her students, or any other students at St. Columba.

39.     On December 12, 2019, Ms. Ostrander was admitted to the hospital with pre-term labor.

40.     Ms. Ostrander's pre-term labor constituted a serious health condition because it increased the risk that she would suffer pregnancy complications. She was admitted to the hospital for two days.

41.     On December 13, 2019, Defendants made the decision to cancel Ms. Ostrander's contract and change her from a salaried employee to an hourly employee.

42.     When the Principal of St. Columba, John Amann informed Ms. Ostrander about the decision, he told her that order to change her employment status was coming "*straight from the Diocese*." Thus, the Diocese was exerting direct control

**FIRST AMENDED COMPLAINT**

Law Offices of
Devon K. Roepcke

D̲K̲R̲

over Ms. Ostrander's wages, and hours of work.

43.     Ms. Ostrander resisted the change because she had always been a salaried teacher.  She felt that the demands of the job lend themselves more to a salaried position, rather than an hourly one.

44.     Additionally, as a salaried teacher, her $40,000 salary was spread out so that she would be paid the same amount during school holidays, breaks, and summer vacation that she was paid when school was in session.  As an hourly employee, her weekly compensation would remain comparable, but once school was out for vacations or holidays, she would not be paid anything.  This would result in a significant drop in her annual income.

45.     Mr. Amann informed Ms. Ostrander that she could clock in for additional time to make up for some of the additional income she was supposed to be earning under her contract, but the Diocese would determine how many additional hours.

46.     Mr. Amann told Ms. Ostrander he would let her know once he had an answer from the Diocese about the additional time.

47.     On or about December 16, 2019, Ms. Ostrander went to Marlo Antonio, who was the Location Administrator at St. Columba, to discuss her options for taking leave for the birth of her child.

48.     Ms. Antonio was not sure whether Ms. Ostrander qualified for FMLA leave because she had not been at St. Columba for more than twelve months.

49.     As was common practice when Ms. Antonio was unsure about something, she escalated the question to Kristie Krische, who worked for the Office for Human Resources at the Diocese.

50.     Ms. Krische informed Ms. Antonio that although Ms. Ostrander had not been employed with St. Columba for more than twelve months, her "Diocesian Hire Date" made her employment more than twelve months, so Ms. Ostrander qualified for FMLA.

51.     On December 16, 2019, Ms. Antonio forwarded the response she got from

**FIRST AMENDED COMPLAINT**

Ms. Krische regarding protected leave, stating "*[h]ere is the guideline from the Diocese. If you have any questions, please feel free to contact Kristie Krische.*"

52.   On January 14, 2020, Ms. Antonio sent the following email to Ms. Ostrander:

Hi, Sarah!

The Leave Request Form only needs your information on Section I on page 1 and then Ms. Lori will complete Section II.  Please complete page 1 and then give the form to Ms. Lori.

There is no portion here for the doctor.

Section III is for Diocese HR.

Thank you,

Marlo Antonio
Business Manager
St. Columba Parish

53.   Attached to the email was the "Leave Request Form," a copy of which is also attached hereto as Exhibit "A."

54.   The upper right-hand corner of the "Leave Request Form," has the logo of the "Diocese of San Diego Office for Human Resources"

55.   The "Leave Request Form" indicates that it is for Family and Medical Leave Act (FMLA) California Family Rights Act (CFRA) and Pregnancy Leave.  Within the form itself it does not distinguish between a request for protected leave under FMLA or CFRA.  Thus, a request using this form was a request for leave under both FMLA and CFRA

**FIRST AMENDED COMPLAINT**

56. The "Leave Request Form" consists of three sections: Section I is to be completed by the employee, indicating the type of leave to be taken and the reason; Section II is to be completed by the Location Administrator; and Section III is to be completed by the Office for Human Resources at the Diocese.

57. Section III contains a box to check whether the employee has been employed by the Diocese for at least 12 months, with a place to write the "Diocesan Hire Date." Under that section is a section for Diocese HR to check whether the employee has worked at least 1,250 hours in the last 12 months for the Diocese.

58. At the time when Ms. Ostrander requested to take leave, she had been employed for more than 12 months and she had worked more than 1,250 hours in the previous 12 months because the time she worked for St. Mary's is included.

59. If for some reason Ms. Ostrander did not actually qualify for protected leave, Ms. Krische, on behalf of the Diocese, and Ms. Antonio, on behalf of St. Columba, represented to Ms. Ostrander that she qualified for protected leave under FMLA and CFRA.

60. Ms. Ostrander reasonably relied on the representations of Ms. Krische and Ms. Antonio that she qualified for protected leave because they were in positions to approve Ms. Ostrander's request for leave, and they indicated that they had checked her qualifications.

61. On January 15, 2020, in reliance on the representation that she qualified for protected leave under FMLA and CFRA, Ms. Ostrander submitted to the Diocese her request to take protected leave for the birth of her child.

62. Ms. Ostrander requested to start her protected leave on February 6, 2020, which was her due date, and planned to return to work on April 30, 2020 to complete the school year.

63. On January 16, 2020, Ms. Ostrander sent a follow up email to Mr. Aman asking if the Diocese had determined how many additional hours she would be allowed to claim to make up for the loss of pay after switching her from a salaried

**FIRST AMENDED COMPLAINT**

1  employee to an hourly employee.

2  64.    Later in the afternoon on January 16, 2020, Ms. Ostrander was called to the

3  office and told that she was being terminated.

4  65.    Defendants gave a pretextual excuse, stating that her coursework in college

5  and her Virginia teaching certificate would not transfer to the State of California for

6  Community Care Licensing.  This is not true.

7  66.    On March 2, 2020, a month and a half after Defendants terminated Ms.

8  Ostrander on the false excuse that she would not able to be credentialed in

9  California, Ms. Ostrander received her Multiple Subject Teaching Credential from

10  the California Commission on Teacher Credentialing.

11  67.    The Diocese jointly employed Ms. Ostrander throughout her employment

12  with St. Mary's and St. Columba.

13  68.    The Diocese had the power to hire and fire Ms. Ostrander.  This is

14  demonstrated by the fact that the Diocese received and reviewed her Live Scan

15  background check, and ordered St. Columba to reclassify Ms. Ostrander's position

16  from salaried to hourly.

17  69.    The Diocese supervised and controlled employee work schedules or

18  conditions of payment.  This is indicated by the fact that the Diocese was

19  responsible for determining whether employees qualified for leave, and granting

20  such requests.

21  70.    On or about April 1, 2020, Mr. Aman sent an email to the families of St.

22  Columba School in which he indicates "Per guidance from the Diocese of San

23  Diego, we are being asked to no longer provide pay to our Preschool teachers

24  effective April 3rd."  He goes on to say, "[t]his is not a decision that we take lightly,

25  but we do operate as part of a larger system."

26  71.    The Diocese' ability to order St. Columba to stop paying preschool teachers

27  and close down during the COVID pandemic indicates that it controls the rate,

28  method, and condition of payment, as well as the work schedules for the teachers at

-10-
**FIRST AMENDED COMPLAINT**

Law Offices of
Devon K. Roepcke

1    its schools.

2    72.    Additionally, the Diocese determined the rate and payment method for Ms.

3    Ostrander when it changed her status from salary to hourly and determined that she

4    should remain clocked in for additional time to make up for the difference in her pay

5    that resulted from the change.

6    73.    The Diocese maintained employment records.  This is indicated by the fact

7    that the Dioceses kept track of the "Diocesan Hire Date" and maintained the Live

8    Scan background check reports, allowing employees to move from one Diocese

9    school to another without having to undergo an additional background check.

10

11                              **FIRST CAUSE OF ACTION**

12   **(Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964,**

13                              **Against all Defendants)**

14   74.    Plaintiff incorporates by reference and realleges each and every one of the

15   allegations contained in the preceding and foregoing paragraphs of this First Amended

16   Complaint as if fully set forth herein.

17   75.    At all relevant times, Defendants were subject to Title VII of the Civil Rights

18   Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section

19   1981, (Title VII),

20   76.    Plaintiff was a covered employee under Title VII and Defendants were covered

21   employers.

22   77.    Plaintiff has exhausted all administrative requirements prior to filing this cause

23   of action for violation of Title VII, and is filing this cause of action in a timely fashion.

24   78.    Under 42 U.S.C. 2000e-2(a), it is unlawful to fail or refuse to hire or to

25   discharge any individual or otherwise to discriminate against any individual with

26   respect to his compensation, terms, conditions, or privileges of employment, because

27   of such individual's sex. 42 U.S.C. § 2000e-2(a).

28   79.    An employment practice which causes disparate impact on the basis of sex is

Law Offices of
Devon K. Roepcke

DKR

1  unlawful.  42 U.S.C. 2000e-2(k).

2  80.    "[T]he terms 'because of sex' or 'on the basis of sex' include, but are not

3  limited to, because of or on the basis of pregnancy, childbirth, or related medical

4  conditions. . . ."

5  81.    "[W]omen affected by pregnancy, childbirth, or related medical conditions

6  shall be treated the same for all employment-related purposes, including receipt of

7  benefits under fringe benefit programs, as other persons not so affected but similar in

8  their ability or inability to work. . . ." 42 U.S.C. 2000e(k).

9  82.    Defendants knew that Plaintiff was pregnant.

10  83.    Defendants discriminated against plaintiff based on her sex (female) with

11  respect to the terms and conditions of her employment, including, without

12  limitation, in that she was demoted, terminated, and otherwise discriminated against

13  related to her pregnancy and childbirth, and related to her being a woman affected

14  by pregnancy and childbirth.

15  84.    As a proximate result of Defendants' violations of Title VII, as described

16  herein, Plaintiff has suffered, and continues to suffer, economic loss in an amount to

17  be shown according to proof.

18  85.    As a further proximate result of Defendants' violation of Title VII, as

19  described herein, Plaintiff has suffered, and continues to suffer, emotional distress,

20  mental anguish, shame, embarrassment, humiliation, loss of enjoyment of life, and

21  injury to reputation, and is entitled to an award of damages to compensate her

22  therefor.

23  86.    Defendants' violation of Title VII, as aforesaid, has been malicious and

24  oppressive, and Plaintiff is entitled to an award of punitive and exemplary damages

25  therefor.

26  87.    Plaintiff has had to hire attorneys to prosecute the action herein, and is

27  entitled to an award of reasonable attorneys' fees.

28

-12-
**FIRST AMENDED COMPLAINT**

**SECOND CAUSE OF ACTION**

**(Interference with CFRA Leave Against all Defendants)**

88.     Plaintiff incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this First Amended Complaint as if fully set forth herein.

89.     Defendants were a covered employer and Plaintiff was an eligible employee under the CFRA.

90.     Plaintiff requested protected leave under the CFRA for the birth of her child.

91.     Plaintiff provided Defendants with adequate notice of her request for protected leave.

92.     Defendants interfered with Plaintiff's right to take CFRA leave and denied her said leave by preemptively terminating her employment.

93.     Defendants willfully and/or with reckless indifference, violated CFRA and discriminated against Plaintiff as outlined above, as a result of exercising her right to request and/or take family and/or medical leave from her employment. Such discrimination has resulted in damage and injury to Plaintiff as alleged herein.

94.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.

95.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

96.     As a result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial.

Law Offices of
Devon K. Roepcke

**FIRST AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices of
Devon K. Roepcke

**DKR**

### THIRD CAUSE OF ACTION

### (Retaliation Violation of the CFRA Against all Defendants)

97.    Plaintiff incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this First Amended Complaint as if fully set forth herein.

98.    Plaintiff exercised her right to take CFRA leave by making a request to HR at the Diocese for medical leave from her employment for the birth of her child.

99.    After Plaintiff exercised her right to take family and/or medical leave under the CFRA, Defendants terminated her employment.

100.   Defendants willfully and/or with reckless indifference, violated CFRA and discriminated against Plaintiff as outlined above, as a result of exercising her right to request and/or take family and/or medical leave from her employment. Such discrimination has resulted in damage and injury to Plaintiff as alleged herein.

101.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.

102.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

103.   As a result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial.

### FOURTH CAUSE OF ACTION

### (Interference with FMLA Leave Against all Defendants)

104.   Plaintiff incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this First Amended

**FIRST AMENDED COMPLAINT**

1  Complaint as if fully set forth herein.

2  105.   Defendants were a covered employer and Plaintiff was an eligible employee

3  under the FMLA.

4  106.   Plaintiff provided notice of her intent to take FMLA leave by making a request

5  to HR at the Diocese for medical leave from her employment for reasons covered

6  under the FMLA, namely her pregnancy.

7  107.   Defendants interfered with Plaintiff's right to take FMLA leave and denied her

8  said leave by terminating her employment.

9  108.   Defendants willfully and/or with reckless indifference, violated FMLA and

10  discriminated against Plaintiff as outlined above, as a result of exercising her right to

11  request and/or take family and/or medical leave from her employment. Such

12  discrimination has resulted in damage and injury to Plaintiff as alleged herein.

13  109.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

14  suffered special damages including but not limited to past and future loss of income,

15  benefits, medical expenses, and other damages to be proven at time of trial.

16  110.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

17  suffered general damages including but not limited to shock, embarrassment, physical

18  distress and injury, humiliation, emotional distress, stress and other damages to be

19  proven at the time of trial.

20  111.   As a result of Defendants' conduct, Plaintiff was forced to retain an attorney in

21  order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees

22  and costs incurred in this litigation in an amount according to proof at trial.

23

24  ### FIFTH CAUSE OF ACTION

25  **(Retaliation Violation of the FMLA Against all Defendants)**

26  112.   Plaintiff incorporates by reference and realleges each and every one of the

27  allegations contained in the preceding and foregoing paragraphs of this First Amended

28  Complaint as if fully set forth herein.

**FIRST AMENDED COMPLAINT**

Law Offices of
Devon K. Roepcke

DKR

113.   Plaintiff exercised her right to take FMLA leave by making a request to HR at the Diocese for medical leave from her employment for reasons covered under the FMLA.

114.   After Plaintiff exercised her right to take family and/or medical leave under the FMLA, Defendants terminated her employment.

115.   Defendants willfully and/or with reckless indifference, violated FMLA and discriminated against Plaintiff as outlined above, as a result of exercising her right to request and/or take family and/or medical leave from her employment. Such discrimination has resulted in damage and injury to Plaintiff as alleged herein.

116.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.

117.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

118.   As a result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect her rights. Accordingly, Plaintiff seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy Against all Defendants)

119.   Plaintiff incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this First Amended Complaint as if fully set forth herein.

120.   Plaintiff was in an employer-employee relationship with Defendants.

121.   At all times mentioned herein, article I, section 8 of the California Constitution prohibited the disqualification of a person entering or pursuing employment on the

Law Offices of
Devon K. Roepcke

D K R

1   basis of sex, which includes pregnancy.  See *Badih v. Myers* (1995) 36 Cal. App. 4th

2   1289, 1296.

3   122.   At all times mentioned herein, the Title VII, prohibited discrimination on the

4   basis of sex, which includes discrimination on the basis of pregnancy childbirth, or

5   related medical conditions." 42 U.S.C. § 2000e(k).

6   123.   At all times mentioned herein, the FMLA and CFRA provided that eligible

7   employees could take up to 12 weeks of protected leave due to medical conditions,

8   including for the birth of a child, and prohibited employers from interfering with said

9   leave, or retaliating against employees who requested or used leave.

10  124.   Defendants terminated Plaintiff's employment.

11  125.   Plaintiff's sex, pregnancy, and her request for protected leave for the birth of

12  her child were motivating reasons for Plaintiff's discharge.

13  126.   Defendants' conduct, violated the public policy provided in article I, section 8

14  of the California Constitution because in terminating Plaintiff's employment because

15  of her pregnancy, Defendants disqualified Plaintiff from pursing and continuing her

16  employment on the basis of her sex.

17  127.   As alleged herein, Defendants' conduct violated the public policy provided in

18  Title VII because they terminated her employment on the basis of her sex.

19  128.   As alleged herein, Defendant's conduct violated the public policy provided in

20  FMLA and CFRA because they terminated her employment as a result of her request

21  for protected leave for the birth of her child.

22  129.   As a direct and proximate result of the unlawful Defendants' conduct, which

23  violates the public policy described herein, Plaintiff suffered special damages

24  including but not limited to past and future loss of income, benefits, and other

25  damages to be proven at time of trial.

26  130.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

27  suffered general damages including but not limited to shock, embarrassment,

28  humiliation, emotional distress, stress and other damages to be proven at the time of

1   trial.

2   131.   Defendants committed the acts herein alleged maliciously, fraudulently, and

3   oppressively in conscious disregard for Plaintiff's rights. The unlawful conduct

4   alleged above was engaged in by the officers, directors, supervisors and/or managing

5   agents of Defendants who were acting, at all times relevant to this Complaint, within

6   the scope and course of their employment. Defendants knew or should have known

7   of the conduct and ratified their unlawful conduct. Plaintiff is therefore entitled to

8   recover punitive damages from Defendants in an amount according to proof.

9

10                          **REQUEST FOR JURY TRIAL**

11   132.   Plaintiff requests a trial by jury of all issues triable as a matter of right by a

12   jury.

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Law Offices of
Devon K. Roepcke

DKR

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays for judgment against Defendants as follows:

1. For economic damages for lost wages, medical expenses and lost employment opportunities in an amount within this Court's general jurisdiction according to proof at trial;

2. For general non-economic damages for emotional and physical distress, humiliation and mental anguish relief in an amount within this Court's general jurisdiction according to proof at the time of trial;

3. For punitive damages in an amount sufficient to punish;

4. For prejudgment interest;

5. For attorneys' fees;

6. For costs of suit; and

7. For such other and further relief as the Court deems proper.

DATED: August 9, 2021          **LAW OFFICES OF DEVON K. ROEPCKE, PC**

By: _____

DEVON K. ROEPCKE, ESQ.
Attorneys for Plaintiff
Sarah Ostrander

Exhibit "A"

DIOCESE OF SAN DIEGO

# LEAVE REQUEST FORM

- ♦ **Family and Medical Leave Act (FMLA)**   ♦ **California Family Rights Act (CFRA)**
  - ♦ **Pregnancy Leave**



Office for Human Resources

---

## SECTION I:  For Completion by Employee

**Employee Name:**
Sarah Ostrander

**Home Phone:** ███████████

**Employee Mailing Address:** ████████████████████

**Email Address While on Leave:**
████████████████

**Date Leave Begins:**
February 6, 2020

**Date Leave Ends:**
April 30, 2020

If you are giving less than 30 days notice, please specify reason:

**Type of Leave Request:**  ☑ Consecutive leave   ☐ Intermittent or Reduced Schedule  (Specify Schedule):

**I request a Family/Medical Leave for the following reason (check one):**
- ☑ Disabled by pregnancy or childbirth
- ☐ Bonding leave after the birth of a child or bonding leave after the placement of a child for adoption of foster care.
- ☐ In order to care for an immediate family member because such member has a serious health condition.
  **Check One:** ☐ **child**   ☐ **spouse**   ☐ **parent**   **(must submit medical certification within 15 days)**
- ☐ Employee's own serious health condition

NOTE:  A serious health condition is defined as an illness, injury, impairment, or physical or mental condition that involves either an overnight stay in a medical care facility, or continuing treatment by a health care provider for a condition that either prevents the employee from performing the functions of the employee's job, or prevents the qualified family member from participating in school or other daily activities. Subject to certain conditions, the continuing treatment requirement may be met by a period of incapacity of more than three consecutive calendar days combined with at least two visits to a health care provider or one visit and a regimen of continuing treatment, or incapacity due to pregnancy, or incapacity due to a chronic condition. Other conditions may meet the definition of continuing treatment.

- ☐ To assist a child, spouse, or parent who is a member of the National Guard or Reserves with a qualifying exigency" related   to active duty or a call of active duty status in support of a contingency operation.
- ☐ To care for a child, spouse, or "next of kin" service member in the United States Armed Forces who has a serious illness or injury incurred in the line of duty on active duty (up to 26 weeks of leave).
  **(must submit a completed certification from the Department of Defense or Veterans Affairs within 15 calendar days)**

**I understand:**

- Upon return from my approved family / medical leave under the FMLA, I will be returned to my same or equivalent position as required by law; provided that my leave does not exceed the limits provided under the law.  If I am not eligible for a leave of absence under the FMLA and am provided with leave time at the employer's discretion, I understand that there is not a guaranty of reinstatement to my position.
- **Eligibility for and approval of FMLA/ CFRA leave does not constitute a waiver or release of any rights arising from the non-renewal notice previously given, nor does it constitute an implied renewal of the contract, or offer of employment for the coming year.**
- If I need to extend my leave beyond what was originally requested, I will submit supporting documentation at least 5 days prior to the expiration of my leave.
- I am responsible to pay my portion of all benefit premiums during a leave of absence under the FMLA and/or CFRA.  While on paid leave my portion of benefit premiums will continue to be paid through payroll deductions.  While on unpaid leave, I will make arrangements with my location administrator to make my portion of benefit premium payments.
- I may use my accrued and unused vacation and sick time for all leaves prior to commencing an unpaid leave.
  I ☑ **Do** ☐ **Do not request the use of my accrued vacation time.**
  I ☑ **Do** ☐ **Do not request the use of my accrued sick time.**
  If choosing to use accrued sick time, please choose one of the following options:
  ✓ I wish to use 100% of sick time during my one-week waiting period for disability payments and then in ½ day increments thereafter until depleted.
  ☐ I wish to use my sick time in full-day increments until depleted.  I have contacted EDD and I am aware of how this will affect my disability payments.

I have read and understand the above information as well as the attached diocesan leave policies.  I acknowledge that it is my responsibility to furnish The Office for Human Resources with the required medical certification within 15 calendar days.
The required medical certification ☐ **Is** ☐ **Is Not** attached.

Employee Name: _____    Location: _____

## SECTION II:  For Completion by Location Administrator:

Location Administrator Name: _____ | Location Hire Date: _____

Cycle Standard Hours: _____ | Employee Job Title: _____

Last Day Worked: _____ | Date Leave Began: _____

Sick Balance (in hours) as of Leave Request Date: _____ | Vacation Balance (in hours) as of Leave Request Date: _____

Does the Employee's Spouse Work At This Location?    Yes    No

_____
Location Administrator Signature                    Date

## SECTION III: For Completion by Office for Human Resources:

Depending on the employee's eligibility, one or more of the following leave types is being designated (check all that apply):

☐ FMLA   ☐ CFRA   ☐ Pregnancy Related   ☐ Exigency   ☐ Service Member      Was 30 day notice given? ☐ Yes ☐ No
*(Dates and type of leave designation will be finalized once medical certification is received and eligibility approved)*

Has the employee taken any family / medical leave in the last 12 months?                    ☐ Yes ☐ No

Number of days used: _____    Number of days remaining: _____

Has the employee been employed by the diocese for at least 12 months?                    ☐ Yes ☐ No

Diocesan Hire Date: _____

Has the employee worked at least 1,250 hours in the last 12 months?                    ☐ Yes ☐ No

Number of hours worked: _____

☐ **Leave Request Approved**     ☐ **Leave Request Denied**   **Reason for Denial:**

_____          _____
Human Resources Signature                                  Date

## SECTION IV:  PAYROLL INSTRUCTIONS FOR LOCATION ADMINISTRATOR

Please pay the employee as follows: