1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12
13

SARAH OSTRANDER, an individual;

Case No.:   3:21-cv-00175-W-LL

14

Plaintiff,

15

v.

**ORDER: (1) GRANTING REQUEST FOR JUDICIAL NOTICE [DOC. 13-2]; (2) DENYING MOTION TO STRIKE [DOC. 12]; AND (3) DENYING MOTION TO DISMISS [DOC. 13]**

16

ST. COLUMBA SCHOOL, et al.;

17

Defendants.

18
19

Defendant Pastor of Saint Columba Catholic Parish in San Diego, California ("St.

20

Columba") moves to dismiss and strike certain allegations from the First Amended

21

Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Sarah

22

Ostrander opposes.

23

The Court decides the matter on the papers submitted and without oral argument.

24

Civ. L.R. 7.1(d.1).  For the reasons that follow, the Court **GRANTS** Defendant's request

25

for judicial notice [Doc. 13-2], **DENIES** Defendant's motion to strike [Doc. 12] and

26

**DENIES** Defendant's motion to dismiss [Doc. 13].

27
28

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   BACKGROUND

Plaintiff Sarah Ostrander graduated from Aurora University in 2010 with a bachelor's degree in Elementary Education and a minor in Special Education.  (*First Amended Comp.* ("FAC") [Doc. 11] ¶ 8.)  After graduating, she taught for several years throughout the mid-Atlantic.  (*Id.* ¶¶ 9–12.)  She held a teaching certificate in the various states where she worked.  (*Id.* ¶ 15.)

In 2018, Ostrander moved to San Diego after her husband, who is in the Navy, was stationed here.  (*FAC* ¶¶ 10, 14.)  Ostrander obtained a provisional teaching certificate and was hired by the San Diego Catholic school, St. Mary's, as a second-grade teacher for the 2018-2019 school year.  (*Id.* ¶¶ 15, 16, 17.)  The following year, she was hired by another San Diego Catholic school, Defendant St. Columba — this time as a preschool teacher for the 2019-2020 school year.  (*Id.* ¶ 24.)

Ostrander's contract with St. Columba provided her with an annual salary of $40,000.  (*FAC* ¶ 31.)  She alleges Defendant The Roman Catholic Biship [sic] of San Diego (the "Diocese") provided the employment contract, which was "nearly identical to the contract she signed for St. Mary's."  (*Id.* ¶ 25.)  Under its terms, Ostrander was required to submit her "fingerprints to the Department of Justice for a background check through Live Scan."  (*Id.* ¶ 26.)  However, this requirement was waived because she had already submitted her fingerprints through Live Scan to the Diocese when she was hired by St. Mary's.  (*Id.* ¶¶ 18, 26.)

In May of that same year, Ostrander became pregnant with a due date of February 6, 2020.  (*FAC* ¶ 32.)  On December 12, 2019, Ostrander was admitted to the hospital for two days with pre-term labor.  (*Id.* ¶¶ 39, 40.)  She contends her "pre-term labor constituted a serious health condition because it increased the risk that she would suffer pregnancy complications."  (*Id.* ¶ 40.)

The day after Ostrander was admitted to the hospital, "Defendants" decided to cancel Ostrander's contract and change her from a salaried employee to an hourly one.  (*FAC* ¶ 41.)  "When the Principal of St. Columba, John Amann informed Ms. Ostrander

2

1    about the decision, he told her that order to change her employment status was coming

2    'straight from the Diocese.'" (*Id.* ¶ 42.)  The change meant Ostrander's annual income

3    would drop significantly because she would no longer be paid when school was out for

4    vacations or holidays.  (*Id.* ¶ 44.)

5          On or about December 16, 2019, Ms. Ostrander went to St. Columba's

6    administrator, Marlo Antonio, to discuss her options for taking leave for the birth of her

7    child.  (*FAC* ¶ 47.)  Antonio was not sure whether Ostrander qualified for FMLA leave

8    because she had not been at St. Columba for more than twelve months, so Antonio

9    "escalated the question to Kristie Krische, who worked for the Office for Human

10   Resources at the Diocese."  (*Id.* ¶¶ 48, 49.)  Krische informed Antonio that although

11   Ostrander "had not been employed with St. Columba for more than twelve months, her

12   'Diocesian Hire Date' made her employment more than twelve months, so Ms. Ostrander

13   qualified for FMLA."  (*Id.* ¶ 50.)  Antonio forwarded the response she got from Ms.

14   Krische regarding protected leave, stating "[h]ere is the guideline from the Diocese. If

15   you have any questions, please feel free to contact Kristie Krische."  (*Id.* ¶ 51.)

16         On January 14, 2020, Antonio e-mailed Ostrander about filling out her Leave

17   Request Form for FMLA leave.  (*FAC* ¶ 52.)  She instructed Ostrander to only fill out

18   section I on page one and stated that "Section III is for Diocese HR."  (*Id.*)

19         The next day, Ostrander submitted her request for leave for the birth of her child

20   from February 6 to April 30, 2020.  (*FAC* ¶¶ 61, 62.)  Later that day, Ostrander was

21   terminated.  (*Id.* ¶ 64.)  "Defendants" told Ostrander that her coursework in college and

22   her Virginia teaching certificate would not transfer to the State of California for

23   Community Care Licensing."  (*Id.* ¶ 65.)  However, on March 2, Ostrander received her

24   Multiple Subject Teaching Credential from the California Commission on Teacher

25   Credentialing.  (*Id.* ¶ 66.)

26         On October 2, 2020, Ostrander filed a lawsuit in the San Diego Superior Court

27   against the Diocese of San Diego Education & Welfare Corporation and St. Columba

28   alleging twelve causes of action.  (*See Compl.* [Doc. 1-2].)  On January 6, 2021,

1  Ostrander dismissed the former without prejudice.  (*See Notice of Removal* [Doc. 1], Ex.

2  1 at 3.)  On January 29, 2021, St. Columba removed the case to federal court.  (*See*

3  *Removal Notice* [Doc. 1].)  St. Columba then moved to dismiss the Complaint.

4        On July 19, 2021, this Court granted St. Columba's motion without leave to

5  amend as to certain causes of action, and with leave to amend as to causes of action for

6  violation of the California Family Rights Act ("CFRA") and the Family Medical Leave

7  Act ("FMLA").  (*Dismissal Order* [Doc. 10] 14:1–6.)  The order also denied St.

8  Columba's motion to dismiss the cause of action for wrongful termination in violation of

9  public policy.  (*Id.* 14:3–6.[1])

10       On August 9, 2021, Ostrander filed the FAC alleging six causes of action for:

11  (1) Sex Discrimination in Violation of Title VII; (2) Interference with CFRA Leave; (3)

12  Retaliation in Violation of CFRA; (4) Interference with FMLA Leave; (5) Retaliation in

13  violation of FMLA; and (6) Wrongful Termination in Violation of Public Policy.  (*See*

14  *FAC.*)  The FAC also adds the Roman Catholic Biship [sic] of San Diego (the "Diocese")

15  as a defendant and a request for punitive damages.  (*Id.* ¶ 3, p. 19:10.)

16       Defendant St. Columba now moves to strike from the FAC a request for punitive

17  damages, the Diocese as a defendant, and factual allegations regarding an email sent after

18  Ostrander was fired.  (*See MTS P&A* [Doc. 12-1].)  In addition, St. Columba moves to

19  dismiss the first through fifth causes of action.  (*See MTD P&A* [Doc. 13-1].)  Ostrander

20  opposes both motions.  (*See Opp'n to MTS* [Doc. 16]; *Opp'n to MTD* [Doc. 15].)

21

22  **II.   REQUEST FOR JUDICIAL NOTICE**

23       St. Columba requests judicial notice of (1) its request for judicial notice filed in

24  support of the motion to dismiss the Complaint (which this Court granted) and (2) the

25

26  ———————————

27  [1] St. Columba also argued the entire Complaint (which included a Title VII cause of action) was barred
    by the ministerial exemption.  (*P&A* [Doc. 4-1] 13:1–2.)  The Dismissal Order disagreed and thus

28  denied the motion as to the Title VII cause of action.  (*Dismissal Order* 11:8–13:4.)

1  Dismissal Order.  (*RJN* [Doc. 13-2] 1:5–10.)  Ostrander does not dispute that judicial

2  notice of these documents is appropriate.  Accordingly, the Court will grant the request.

3

4  **III.    MOTION TO STRIKE – FED. R. CIV. P. 12(f)**

5        **A.    Legal Standard**

6        Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a

7  pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

8  matter."  Id.  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of

9  time and money that must arise from litigating spurious issues by dispensing with those

10  issues prior to trial."  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.

11  1983).  However, 12(f) motions are "generally regarded with disfavor because of the

12  limited importance of pleading in federal practice, and because they are often used as a

13  delaying tactic."  Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D.

14  Cal. 2003).  Unless it would prejudice the opposing party, courts freely grant leave to

15  amend stricken pleadings.  Wyshak v. City Nat'l Bank, 607 F.2d 824, 826 (9th Cir.

16  1979); see also Fed. R. Civ. P. 15(a)(2).

17

18        **B.    Discussion**

19        St. Columba seeks to strike allegations from the FAC related to three subjects.  The

20  first is allegations related to the Diocese.  St. Columba argues the allegations should be

21  struck for two reasons.  First it argues Ostrander violated Federal Rule of Civil Procedure

22  15(a)(2) by adding a new defendant without first obtaining either a court order or St.

23  Columba's consent.  (*MTS P&A* 3:3–4:13.)  The Court disagrees.

24        In granting St. Columba's original motion to dismiss, the Dismissal Order allowed

25  Ostrander to file the FAC.  (*Dismissal Order* 14:3–6.)  St. Columba argues, however, that

26  the order only allowed her to amend the FMLA and CFRA causes of action, and not to

27  add a defendant.  (*MTS P&A* 3:5–4:1.)  But the Dismissal Order did not prohibit adding a

28

5

1    defendant nor did it limit amendments to only factual allegations related to those causes

2    of action.  Additionally, the order dismissed the FMLA and CFRA causes of action

3    because the Complaint did not allege sufficient facts to show a joint employer.

4    (*Dismissal Order* 8:4–11.)  In filing the FAC, Ostrander not only adds the Diocese as a

5    defendant, but added factual allegations purporting to show it was her joint employer.

6    (*See e.g. FAC* ¶¶ 2, 3, 17–27.)  Accordingly, St. Columba's argument is unavailing.

7          St. Columba next argues that it will suffer prejudice if Ostrander is allowed to add

8    the Diocese because the Diocese "was not OSTRANDER's employer and there is no

9    ground for suing it as a joint employer…."  (*MTS P&A* 4:2–7.)  As discussed below, the

10   FAC's factual allegations are now sufficient to suggest St. Columba and the Diocese

11   were her joint employer.  Accordingly, this argument lacks merit.

12         St. Columba next seeks to strike allegations related to Ostrander's request for

13   punitive damages.  (*MTS P&A* 4:14–27.)  St. Columba contends that because she

14   voluntarily dismissed the punitive damage claim from the original Complaint, her request

15   for punitive damages in the FAC is "confusing and prejudicial."  (*Id.*)

16         But when Ostrander dismissed the claim without prejudice, she explicitly reserved

17   her right to assert the claim.  (*See Jt. Mot. to Dismiss* [Doc. 3].)  Additionally, the FAC

18   now includes new factual allegations that—given St. Columba is not arguing the request

19   is insufficiently pled—presumably support the punitive damage request.  For these

20   reasons, this argument is not persuasive.

21         Finally, St. Columba also seeks to strike allegations related to an email St.

22   Columba's principle sent to families of students in which he stated that "[p]er guidance

23   from the Diocese of San Diego, we are being asked to no longer provide pay to our

24   Preschool teachers effective April 3rd."  (*MTS P&A* 5:3–12, citing *FAC* ¶¶ 70, 71.)  St.

25   Columba argues the allegation regarding the email is impertinent and unrelated to the

26   issues in the case.  (*Id.* 6:6–8.)  The Court disagrees.

27         At issue is whether the Diocese and St. Columba were joint employers.  Relevant

28   to this determination is whether the Diocese "(1) had the power to hire and fire

1  employees, (2) supervised and controlled employee work schedules or conditions of

2  payment, (3) determined the rate and method of payment, and (4) maintained

3  employment records." Moreau v. Air France, 356 F.3d 942, 946–53 (9th Cir. 2004).

4  Because the email suggests the Diocese was involved in deciding to stop paying St.

5  Columba's teachers, the allegation is not impertinent or immaterial.

6

7  **IV.    MOTION TO DISMISS – FED. R. CIV. P. 12(b)(6)**

8        **A.    Legal Standard**

9        The Court must dismiss a cause of action for failure to state a claim upon which

10  relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6)

11  tests the legal sufficiency of the complaint. Parks Sch. of Bus., Inc. v. Symington, 51

12  F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either

13  for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.

14  Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the

15  motion, a court must "accept all material allegations of fact as true and construe the

16  complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty.,

17  487 F.3d 1246, 1249 (9th Cir. 2007).

18        A complaint must contain "a short and plain statement of the claim showing that

19  the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has

20  interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to

21  relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555

22  (2007). The allegations in the complaint must "contain sufficient factual matter, accepted

23  as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

24  U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

25        Well-pled allegations in the complaint are assumed true, but a court is not required

26  to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable

27  inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State

28  Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Discussion**

**1.     Title VII Cause of Action**

To establish a prima facie case of gender discrimination, a plaintiff-employee must show that he or she: (1) is a member of a protected class; (2) was subjected to an adverse employment decision; (3) was qualified for the position; and (4) similarly situated nonprotected employees were treated more favorably, "or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004).  St. Columba contends Ostrander's Title VII cause of action fails because she has not alleged facts showing she was qualified (the third element) or that similarly situated individuals were treated more favorably (the fourth element).  (*MTD P&A* 7:3–20.)  The Court disagrees.

The FAC sufficiently alleges Ostrander was qualified.  Ostrander alleges she was a credentialed teacher in several states, with a degree in elementary education and more than eight years of experience. (*FAC* ¶¶ 8, 9.)  When she was terminated, Ostrander had a provisional teaching credential and was waiting for her California teaching credential, which she received a little more than a month after St. Columba terminated her.  (*Id.* ¶¶ 15, 66.)  Also relevant is Ostrander's allegation that as a Catholic school, St. Columba's teachers were not required to have a California teaching credential.  (*Id.* ¶ 28.)  Because at this stage in the litigation the Court must assume the truth of these allegations, the Court finds the FAC sufficiently pleads Ostrander was qualified.

The fourth element is established if "other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  Peterson, 358 F.3d at 603.  Ostrander alleges that on December 12, 2019, she was admitted to the hospital for two days with pre-term labor.  (*FAC* ¶¶ 39, 40.)  The day after Ostrander was admitted to the hospital, St. Columba canceled her contract and changed her from a salaried employee to an hourly one.  (*Id.* ¶ 41.)  Ostrander also alleges that the day she turned in her leave request for the birth of her child, she was terminated. (*Id.* ¶¶ 61, 62, ¶ 64.)  At this stage in the litigation, these allegations surrounding the adverse employment actions

8

1    give rise to an inference of discrimination.  They also suffice to suggest that she suffered

2    discrimination because of her gender.

3            For these reasons, the FAC sufficiently alleges a Title VII cause of action.

4

5                            **2.    FMLA and CFRA Causes of Action**

6            Ostrander alleges St. Columba: (1) interfered with her right to take CFRA and

7    FMLA leave, and (2) retaliated against her for exercising her right to take CFRA and

8    FMLA leave.  (*FAC* ¶¶ 99–118.)  In evaluating interference and retaliation claims under

9    CFRA and FMLA, plaintiffs must establish they are eligible for such leave. See

10   Choochagi v. Barracuda Networks, Inc., 60 Cal. App. 5th 444, 454-57 (2020).  To

11   establish eligibility under CFRA and FMLA, Ostrander must show that at the time she

12   requested leave: (1) she was employed by St. Columba; (2) St. Columba employed 50 or

13   more employees within 75 miles of her workplace; (3) she had more than 12 months of

14   service *and* at least 1,250 hours of service with St. Columba during the previous 12-

15   month period; and (4) the reason for her requested leave was qualified under the statute.

16   Gov't Code § 12945.2(a); 29 U.S.C.A. § 2611(2)(A), § 2612(a)(1).[2]  Courts routinely

17   analyze CFRA and FMLA claims jointly using federal cases since CFRA and FMLA

18   "contain nearly identical provisions regarding family or medical leave." Rogers v. Cty.

19   of Los Angeles, 198 Cal. App. 4th 480, 487 (2011).

20

21                   *a)    Ostrander Has Pled Sufficient Facts to Establish the Diocese Was*

22                          *Her Joint Employer.*

23           St. Columba argues Ostrander was not eligible for CFRA or FMLA leave because

24   she had not worked for their school for the requisite 12 months. (*P&A MTD* 9:21–23.)

25   Ostrander responds that she met the requisite 12-month minimum because the Diocese

26

27   _____

28   [2] The parties do not disagree on the first and second elements.

                                         9

1    was her joint employer with both St. Columba and St. Mary's, the school with which she

2    was employed immediately preceding her time with St. Columba.  (*Opp'n to MTD*

3    10:14–15.)

4         To demonstrate joint employment, a plaintiff must plead facts demonstrating the

5    alleged joint employer: "(1) had the power to hire and fire employees, (2) supervised and

6    controlled employee work schedules or conditions of payment, (3) determined the rate

7    and method of payment, and (4) maintained employment records."  Moreau, 356 F.3d at

8    946–53.  When seeking to establish joint employment, the plaintiff "must at least allege

9    some facts in support of this legal conclusion."  Lesnik v. Eisenmann SE, 374 F. Supp. 3d

10   923, 942 (N.D. Cal. 2019).

11        The FAC alleges the Diocese was responsible for approving a potential employee's

12   Live Scan report, such as Ostrander, and therefore had the power to deny or prevent St.

13   Mary's and St. Columba from hiring.  (*FAC* ¶¶ 27, 28.)  The allegations also indicate the

14   Diocese supervised and was involved in controlling the employee's work schedules, rate

15   of pay and conditions of payment.  (*Id.* ¶¶ 49–57, 69.)  This allegation is supported by

16   Ostrander's allegation that the Diocese (1) was responsible for approving her leave

17   request, (2) instructed St. Columba to change her status from salary to hourly and

18   (3) essentially directed St. Columba to stop paying preschool teachers and close down

19   during the COVID pandemic.  (*Id.* ¶¶ 42, 45, 70–72.)  Finally, the FAC alleges the

20   Diocese maintained employment records, such as the Live Scan reports, for the

21   employees working at the parishes and schools it oversees.  (*Id.* ¶¶ 18-21, 26.)

22        At this stage in the litigation, these allegations are sufficient to support the theory

23   that the Diocese and St. Columba were Ostrander's joint employer.[3]

24

25

26

27   [3] St. Columba also argues Ostrander fails to state an FMLA claim based on equitable estoppel.  (*MTD P&A* 15:1–16:26.)  Ostrander's equitable estoppel argument is an alternative theory for pleading an FMLA violation.  Because the Court finds the FAC adequately alleges joint employment, the Court need

28   not the consider her equitable estoppel theory.

10

1      ***b)      Ostrander Has Pled Sufficient Facts to Support Eligibility Under CFRA.***

2      "CFRA entitles eligible employees to take up to 12 weeks of unpaid medical leave

3      during a 12-month period for certain personal or family medical conditions, including

4      care for their children, parents, or spouses or to recover from their own serious health

5      condition." <u>Neisendorf v. Levi Strauss & Co.</u>, 143 Cal. App. 4th 509, 516 (2006).

6      Qualified leave taken on account of an employee's own serious health conditions does

7      not include "pregnancy, childbirth, or related medical conditions," but the statute does

8      allow for "[l]eave for reason of the birth of a child of the employee." Gov't Code §

9      12945.2(a), § 12945.2(4)(A).

10     St. Columba argues pregnancy disability is not covered by CFRA and therefore

11     Ostrander is not eligible for CFRA leave.  (*MTD P&A* 10:1–27.)  In support of this

12     argument, St. Columba points to her Leave Request Form, attached to the FAC.  On the

13     form, Ostrander was required to respond to the following question, "I request a

14     Family/Medical Leave for the following reason (check one):" (*FAC* Ex. A.)  In response,

15     Ostrander checked "Disabled by pregnancy or childbirth" and not "Bonding leave after

16     the birth of a child or bonding leave after the placement of a child for adoption of foster

17     care."  (*Id.*)  In her opposition, Ostrander argues that because she is not an attorney and

18     was not given any guidance in filling out the form, she did not understand the legal

19     significance of her selection.  (*MTD Opp'n* 12:19–26.)  She also argues that because she

20     requested leave begin on her due date, it is reasonable to infer that "the true reason for the

21     leave was the childbirth itself," not disability due to pregnancy.  (*Id.* 12:26–13:2.)

22     Based on the parties' argument, the issue is essentially whether Ostrander's

23     response on the form bars her CFRA claim as a matter of law.  Under the facts alleged in

24     the FAC, the Court is not convinced it does.  To begin, as the moving party, St. Columba

25     bears the burden of persuasion and has cited no authority supporting such a proposition.

26     Additionally, Ostrander's arguments are persuasive.  She was a preschool teacher, not an

27     attorney.  There are also no allegations indicating St. Columba ever explained eligibility

28     under the CFRA and FMLA.  And although Ostrander checked "disabled by pregnancy,"

11

1   her leave request was to begin on her due date, indicating that she intended to take leave

2   after she delivered the child and was no longer pregnant.  Moreover, the FAC specifically

3   alleges Ostrander met with St. Columba's Location Administrator regarding her options

4   for taking leave "for the birth of her child" (*FAC* ¶ 46), which is a qualified reason for

5   CFRA leave.  <u>See</u> Gov't Code § 12945.2(a), § 12945.2(4)(A).  Based on these

6   allegations, the Court finds the FAC sufficiently alleges Ostrander was qualified for

7   CFRA leave.

8         Finally, regulations governing the CFRA suggest that an employee's notice for

9   leave should be liberally construed where the employee identifies a CFRA-qualifying

10  basis:

11          The employee need not expressly assert rights under CFRA or FMLA, or
            even mention CFRA or FMLA, to meet the notice requirement; however, the
12          employee must state the reason the leave is needed, such as, for example, the
            expected birth of a child or for medical treatment. The mere mention of
13          'vacation,' other paid time off, or resignation does not render the notice
            insufficient, provided the underlying reason for the request is CFRA-
14          qualifying, and the employee communicates that reason to the employer.
            The employer should inquire further of the employee if necessary to
15          determine whether the employee is requesting CFRA leave and to obtain
16          necessary information concerning the leave (i.e., commencement date,
            expected duration, and other permissible information)." (Italics added.)
17          Thus, an employer bears a burden, under CFRA, to inquire further if an
18          employee presents the employer with a CFRA-qualifying reason for
            requesting leave.
19

20

21  <u>Moore v. Regents of University of California</u>, 248 Cal.App.4th 216, 249 (2016) (citing

22  California Code of Regulations, title 2, section 11091, subdivision (a)(1)).  Because

23  Ostrander mentioned a qualifying basis for CFRA leave when she met with St.

24  Columba's Location Administrator regarding her options for taking leave, the Court finds

25  the FAC sufficiently pleads a CFRA claim.

26  //

27  //

28

3:21-cv-00175-W-LL

1  **V.      CONCLUSION & ORDER**

2          For the foregoing reasons, the Court **GRANTS** Defendant's request for judicial

3  notice [Doc. 13-2], **DENIES** the motion to strike [Doc. 12] and **DENIES** the motion to

4  dismiss [Doc. 13].

5          **IT IS SO ORDERED.**

6  Dated:  February 10, 2022

7

8                                                 _____
                                                  Hon. Thomas J. Whelan
9                                                 United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:21-cv-00175-W-LL